O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| CLARISOL MEJIA, | Case No.: 2:23-cv-02028-MEMF-MRW |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 47]** |
| v. | |
| CREDENCE MANAGEMENT SOLUTIONS, UNITEDHEALTHCARE INSURANCE COMPANY and DOES 1- 10, | |
| Defendants. | |

Before the Court is Defendants' Motion for Judgment on the Pleadings. ECF No. 47. Defendants also filed a Request for Judicial Notice. ECF No. 48. For the reasons stated herein, the Court hereby GRANTS the Request for Judicial Notice and DENIES the Motion.

/ / /

/ / /

**BACKGROUND**

I. **Factual Allegations**[1]

Plaintiff Clarisol Mejia ("Mejia") is a resident of California. FAC ¶ 6. Defendant Credence Management Solutions ("Credence") does business in California. *Id*. ¶ 1. Defendant UnitedHealthcare Insurance, Co. ("UHS"; together with Credence, "Defendants") is the administrator and representative for Credence. *Id*. ¶ 2. Credence is Mejia's employer. *Id*. ¶ 10. Mejia received insurance and health benefits through Credence. *Id*. Her health plan through Credence is governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"). *Id*. ¶ 16.

On March 22, 2021, Mejia received an EGD or upper endoscopy (CPT code 43239) from Advanced Weight Loss Surgical Association ("Advanced") and Minimally Invasive Surgical Association ("Minimally"; together with Advanced, "Medical Providers"). *Id*. ¶¶ 18, 3, 4. On April 7, 2021, Mejia received a hiatal hernia repair (CPT code 43281) from the Medical Providers. *Id*. ¶ 19. The services were covered under the health plan provided by Credence. *Id*. ¶ 21. These procedures were successful. *Id*. ¶ 25.

Following the procedures, the Medical Providers submitted bills to Mejia and UHS. *Id*. ¶ 26. The bills totaled to $101,046.00. *Id*. UHS, on behalf of Credence, paid $1,606.60. *Id*. ¶ 27.

Mejia and the Medical Providers asked Defendants to negotiate Mejia's bills. *Id*. ¶ 36. Defendants refused. *Id*. ¶ 37.

On June 27, 2022, Mejia and the Medical Providers appealed and submitted documentation indicating that UHS had not paid for Mejia's bills. *Id*. ¶ 43. UHS upheld its decision on August 12, 2022. *Id*. ¶ 44. Mejia and the Medical Providers appealed again on August 17, 2022, and October 28, 2022, but Defendants did not respond. *Id*. ¶¶ 44–47. Mejia is now responsible to the Medical Providers for the difference between the full cost of the medical procedures she received and the amount paid by Defendants. *Id*. ¶ 48.

---

[1] All facts stated herein are taken from the allegations in Mejia's First Amended Complaint unless otherwise indicated. ECF No. 39 ("FAC"). For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

## II. Procedural History

On February 14, 2023, Mejia filed suit in the Los Angeles County Superior Court, alleging one claim for Recovery of Benefits under 29 U.S.C. § 1132(a)(1)(B). *See generally* ECF No. 1-1. On March 17, 2023, Defendants removed the action on the basis of federal question jurisdiction. ECF No. 1. ("Notice of Removal" or "NOR").

On October 19, 2023, Mejia filed a motion for leave to file an amended complaint, seeking to add additional factual allegations supporting her claim under 29 U.S.C. § 1132(a)(3). ECF No. 28. The Court granted the motion on February 15, 2024. ECF No. 38 ("Amendment Order").

On March 1, 2024, Mejia filed the First Amended Complaint, alleging to claims for: (1) Failure to Pay ERISA Plan Benefits, under 29 U.S.C. § 1132(a)(1)(B), and (2) Breach of Fiduciary Duty, under 29 U.S.C. § 1132(a)(3). *See generally* FAC.

On October 18, 2024, Defendants filed the instant Motion for Judgment on the Pleadings. ECF No. 47 ("Motion" or "Mot."). Defendants also filed a Request for Judicial Notice. ECF No. 48 ("RJN"). The Motion is fully briefed. ECF Nos. 50 ("Opposition" or "Opp'n"), 52 ("Reply").

The Court shared its tentative order on the Motion on April 9, 2025. On April 10, 2025, the Court held a hearing on the Motion. After oral argument, the Court took the Motion under submission.

## III. Applicable Law

Rule 12(c) of the Federal Rules of Civil Procedure ("Rule") provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted). A court must construe all factual allegations in the pleadings in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

A motion under Rule 12(c) is considered "functionally identical" to a motion under Rule 12(b)(6). *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (citing *Dworkin v.*

1 *Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). The key difference between these two motions is just the timing of the filing. *See Dworkin*, 867 F.2d at 1192. Accordingly, judgment on the pleadings should be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is factually plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If judgment on the pleadings is appropriate, a court may grant the non-moving party leave to amend, grant dismissal, or enter a judgment. Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

**REQUEST FOR JUDICIAL NOTICE [ECF NO. 48]**

I.     **Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) ("Rule 201"). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Public records, including documents on file in federal or state court, are proper subjects of judicial notice. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012). Courts may also consider documents under the incorporation by reference doctrine, which is appropriate where "the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on [the documents]." *Lee*, 250 F.3d at 688.

/ / /

/ / /

## II. Discussion

Defendants request the Court judicially notice two documents: (1) the Declaration of Jane Stalinski, ECF No. 1-3 ("Stalinski Declaration" or "Stalinski Decl."), and (2) the health benefits plan sponsored by Credence, ECF No. 1-4 ("Plan").[2]

The Court takes judicial notice of both documents. First, the Stalinski Declaration is a public record, filed in this Court alongside the Notice of Removal. *See Harris*, 682 F.3d at 1131–32. Second, throughout the FAC, Mejia references the Plan; pursuant to the incorporation by reference doctrine, the Court finds it appropriate to take judicial notice thereof. Further, Mejia does not oppose the RJN.

As such, the Court GRANTS the RJN in its entirety.

## MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 47]

### I. Discussion

Defendants move for judgment on the basis that Mejia has failed to state her second claim[3] for Breach of Fiduciary Duty, under 29 U.S.C. § 1132(a)(3) on two grounds: (1) Defendants do not have a duty to negotiate with the Medical Providers and (2) Mejia seeks inappropriate (i.e., duplicative) relief. Mot. at 6–7. The Court will evaluate these grounds in order.

#### A. The Court Finds Fiduciary Duty to Attempt to Negotiate.

On the first ground, Defendants argue that "[a] breach of fiduciary duty based upon an alleged failure to initiate or engage in a negotiation . . . cannot give rise to a claim." *Id*. at 12 (citing to four recent district court cases). Mejia responds that there is a fiduciary duty to *attempt* to negotiate. *See* Opp'n at 6 (framing the issue as fiduciary duty to "consider or [] attempt a negotiation"). Mejia also attempts to distinguish her case from Defendants' cited cases to contend

---

[2] When citing to the Plan, the Court cites to the page numbers generated by the CM/ECF system, not the pagination inherent to the document.

[3] There is no dispute over Mejia's first claim for Failure to Pay ERISA Plan Benefits, under 29 U.S.C. § 1132(a)(1)(B).

5

that her Breach of Fiduciary Duty claim is valid.[4] Opp'n at 6–9. During the hearing, Mejia's counsel added that (1) absent a fiduciary duty to attempt to negotiate, the Plan's provision stating that Defendants would pay "negotiated rates" if such rates exist would be rendered meaningless and (2) no authority precludes finding a fiduciary duty to attempt to negotiate. Defendants' counsel responded that (i) there is no binding authority that affirmatively finds a fiduciary duty to attempt to negotiate and (ii) attempting to negotiate would interfere with their fiduciary duty to "defray[] reasonable expenses in administering the [P]lan." *See* 29 U.S.C. § 1104(a)(1)(A). As such, the Court will evaluate whether Defendants, under the Breach of Fiduciary Duty claim, are obligated to attempt to negotiate on Mejia's behalf with the Medical Providers.

The Court finds that Defendants do not owe a *contractual* duty to attempt to negotiate—or to negotiate—on Mejia's behalf. The Court, however, finds that insofar as Defendants owe fiduciary duties to act in the best interest of Plan participants and beneficiaries—including Mejia—and reading the allegations and drawing reasonable inferences in the light most favorable to Mejia, Defendants have a fiduciary duty to attempt to negotiate with the Medical Providers. The Court therefore DENIES the Motion as to the first ground.

"To state a claim for breach of fiduciary under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021). There is no dispute that ERISA governs the Plan, that Defendants are ERISA fiduciaries, and that Defendants owe fiduciary duties to Mejia.

Turning first to the Plan, the Court finds that the plain language of the Plan does not obligate Defendants to negotiate better rates on Mejia's behalf. The Plan provides two main ways of paying for services received under the Plan ("Allowed Amounts"):

---

[4] Mejia also asserts that this Court "has already found [in the Amendment Order] that Ms. Mejia's breach of fiduciary duty claim is a valid claim at this stage . . . ." Opp'n at 6. For clarification, the Court did *not* find that her claim under 29 U.S.C. § 1132(a)(3) is valid. In its Amendment Order, the Court found that the claim is "not futile" for purposes of Mejia's motion for leave to file an amended complaint, for which the Court applied a wholly different legal standard. *See* Amendment Order at 3 (listing a different standard).

6

> When Covered Health Care Services [5] are received from an out-of-Network provider, Allowed Amounts are determined, based on:
> - Negotiated rates agreed to by the out-of-Network provider and either us or one of our vendors, affiliates or subcontractors.
> - If rates have not been negotiated, then one of the following amounts:
>   - Allowed Amounts are determined based on 110% of the published rates allowed by the *Centers for Medicare and Medicaid Services (CMS)* for Medicare for the same or similar service within the geographic market . . . .
>   - When a rate is not published by *CMS* for the service, we use an available gap methodology to determine a rate for the service . . . .

Plan at 40–41 (italicization in original). Mejia does not allege that Defendants have negotiated rates with the Medical Providers. The Court finds that in the absence of negotiated rates, the natural reading of the Plan allows Defendants to calculate payment based on 110% of the CMS's published rates or Defendants' gap methodology. Mejia provides no binding authority that compels this Court to reach a different conclusion.[6, 7, 8] And insofar as there is no contractual duty to negotiate, the Court also finds that there is no contractual duty to attempt to do what Defendants are not obligated to do.

---

[5] The parties do not dispute that Mejia received Covered Health Care Services as defined by the Plan. *See* Plan at 117 (referencing Section 1 of the Plan, titled "Covered Health Care Services," which lists the types of services covered by the Plan).

[6] This reading of the Plan is also consistent with what the district court found in *Mejia v. Credence Mgmt. Sols.* (*Oscar Mejia*), No. 2:23-cv-02032-SVW-E, 2024 WL 637261, *4 (C.D. Cal. Feb. 14, 2024). *See also Aguilar v. Coast to Coast Comput. Prods., Inc.*, No. 2:23-cv-03996-MCS-E, 2024 WL 4040466 (C.D. Cal. Aug. 7, 2024) (relying on *Oscar Mejia* to reach the same conclusion). The Court sees no reason to disagree with that finding.

[7] Defendants also rely on two other district court decisions: *Talbot v. United Healthcare Ins., Co.*, No. 2:23-cv-02032-SVW-E, 2024 WL 847960 (C.D. Cal. Feb. 16, 2024); *Campbell v. United Healthcare Ins. Co.*, No. 2:23-cv-08823-RGK-E, 2024 WL 1642390 (C.D. Cal. Mar. 20, 2024). Mot. at 11–14. But these cases are inapposite, as they both concern emergency medical services, whereas Mejia does not allege that she received such services. *See Talbot*, 2024 WL 847960 at *6–*7; *Campbell*, 2024 WL 1642390 at *1. Therefore, the Court declines to consider these nonbinding, factually distinguishable cases.

[8] Mejia argues that *Oscar Mejia* is inapplicable because the standard of review applied there was "abuse of discretion" and the case concerned only a claim for failure to pay ERISA benefits under 29 U.S.C. § 1132(a)(1)(B). Opp'n at 6. Be that as it may, this argument is unavailing because this Court would have reached the same conclusion—that the Plan does not impose an obligation to negotiate on Defendants—separately from *Oscar Mejia*.

But the fact that the plain language of the Plan does not require an attempt at negotiation does not necessarily mean that the Defendants have no *fiduciary* duty to attempt to negotiate. As this Court previously found, the claim for breach of fiduciary duty is distinct from the claim for denial of benefits and is not futile. Amendment Order at 3–4. Moreover, the Court finds, based upon the governing case law, that fiduciary duties imposed by ERISA are broader than the contractual duties imposed by individual ERISA plans. For instance, ERISA requires a fiduciary to discharge its duties "for exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Although Defendants argued during the hearing that obligating them to attempt to negotiate with out-of-network providers each time a participant or beneficiary requests would cause Defendants to incur costs, which in turn would be detrimental to the assets in the Plan or at least interfere with their duty to prudently manage the Plan, the Court does not find that merely attempting to negotiate would necessarily be so detrimental to either the participants (or their beneficiaries) or to the Plan's assets. Rather, reading the allegations and inferences in Mejia's favor, the Court concludes that it is plausible that attempting to negotiate would result in favorable rates for both the participants and the Plan.

To be clear, Defendants are not obligated to attempt to negotiate until they secure rates to Mejia's satisfaction. The Supreme Court has made clear that "[t]he common law of trusts recognizes the need to preserve asserts to satisfy future, as well as present, claims and requires a trustee to take impartial account of the interests of all beneficiaries." *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996). Therefore, "a fiduciary obligation, enforceable by beneficiaries seeking relief for themselves, do not necessarily favor payment over nonpayment." *Id.*; *see also Conkright v. Frommert*, 559 U.S. 506, 520 (2010) ("[P]lan administrators . . . have a duty to all beneficiaries to preserve limited plan assets . . . ."). Similarly, the Ninth Circuit has held that "[t]he duty to act in accordance with the plan document does not require a fiduciary to resolve every issue of interpretation in favor of plan beneficiaries." *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004). More relevant to this action, ERISA "does not create an exclusive duty to maximize pecuniary benefits."

*Id*. It is clear to this Court that the determination of whether a particular action constitutes a fiduciary duty in this context depends on whether the action would imperil Plan assets.

Here, particularly at the current stage of this litigation, where the Court must read the allegations and draw inferences in Mejia's favor, the Court finds Defendants' concern over detriment to the Plan's assets premature and lacking foundation. *See* FAC ¶ 37 ("Defendants refused to even consider Plaintiff's request or to engage in any negotiation with Medical Providers."). The Court is therefore not inclined to find that a fiduciary duty to attempt to negotiate never exists.[9]

Taking all of these principles together, the Court finds that in light of the breadth of fiduciary duties imposed by ERISA, and reading the allegations and inferences in Mejia's favor, there is a fiduciary duty to attempt to negotiate where doing so would not imperil Plan assets.

**B. Mejia May Seek the Relief Requested under § 1132(a)(1)(B) and § 1132(a)(3) as Alternative Theories of Liability**

Regarding the second ground for the Motion, the Court found in its Amendment Order that Mejia may pursue both monetary relief (payment of her current bill) and equitable relief (an order compelling Defendants to attempt a negotiation with the Medical Providers). *See* Amendment Order at 4 (citing *Moyle v. Liberty Mutual Retirement Benefit Plan*, 823 F.3d 948, 961–62 (9th Cir. 2016)). Defendants argue that the equitable relief is not available for Mejia because there is no duty to negotiate, Mot. at 15, and allowing Mejia to proceed with the requested monetary relief under both theories of liability may result in a windfall, *id*. at 15–16; *see* Reply at 7–8. Defendants also contend that the monetary relief is more appropriate under Mejia's Failure to Pay ERISA Plan Benefits claim. *Id*. at 16. These arguments fail.

With respect to whether Mejia is entitled to equitable relief for her Breach of Fiduciary Duty claim, the parties appear to agree that so long as Mejia asserts a valid 29 U.S.C. § 1132(a)(3) claim, she may be entitled to equitable relief. *See* Mot. at 15 (citing *Castillo v. Metro. Life Ins. Co.*, 970

---

[9] It appears that discovery will likely reveal whether attempting to negotiate would have had an effect on the Plan's financial health and whether the desire to preserve Plan assets motivated or justified any failure to negotiate that may have occurred here. During the hearing, Defendants' counsel argued that discovery would involve much conjecture and therefore be meaningless. The Court finds otherwise.

F.3d 1224, 1229 (9th Cir. 2020)); Opp'n at 6 (citing *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004)). The Court finds that insofar as there is a fiduciary duty to attempt to negotiate, Section I.A, *supra*, it is proper for Mejia to seek this relief.

Defendants' argument about potential windfall is unavailing. Defendants assert that "paying the full costs of services is not a benefit provided to Plaintiff under the Plan." Mot. at 16 (citing *Collins v. Pension & Ins. Comm. of So. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998)); Reply at 8, 9 ("[Mejia] is not entitled to the full reimbursement of her non-emergent out-of-network medical services . . . ."). But the Court found in its prior Amendment Order that "[a]lthough [Defendants] are correct that the plan provision cited does not necessarily provide that [Defendants] must pay the full amount sought ($101,406.00), the language does not preclude such a remedy either." Amendment Order at 5.[10] Defendants have not set forth judicially noticeable fact that contradicts the Court's previous finding through its Motion. As such, the Court sees no reason to make a different finding at this time.

As to Defendants' argument that monetary relief is more appropriate under 29 U.S.C. § 1132(a)(1)(B), the Court finds, consistent with the prior Amendment Order, that Mejia may proceed with the requested relief under § 1132(a)(1)(B) and § 1132(a)(3) as *alternative* theories. Defendants, relying on *Castillo*, contend that Mejia's request for monetary damages under both § 1132(a)(1)(B) and § 1132(a)(3) "would be duplicative and improper under ERISA." Mot. at 16 (citing 970 F.3d at 1229). But, as the Court explained in the Amendment Order, the Ninth Circuit held in *Moyle*[11] that plaintiffs may "present § 1132(a)(1)(B) and § 1132(a)(3) as alternative—rather than duplicative—theories of liability." Amendment Order at 4. Insofar as the Court's prior finding that "Mejia's claim under section 1132(a)(1)(B) seeks different relief from her claim under section 1132(a)(3)" was based on Mejia's PFAC, which contains the same allegations as the FAC, the Court does not see a

---

[10] Although the Court made this finding while determining whether Mejia's Failure to Pay ERISA Plan Benefits claim, the Court finds that the analysis is applicable for Mejia's Breach of Fiduciary Duty claim as well.

[11] The Ninth Circuit in *Castillo* also cited to *Moyle* and held that "a claimant . . . may proceed simultaneously [under § 1132(a)(1)(B) and § 1132(a)(3)] so long as there is no double recovery." *Castillo*, 970 F.3d at 1229 (citing *Moyle*, 823 F.3d at 961) (internal quotation marks omitted).

reason to reach a different finding now. The Court stands by its previous finding that "Mejia may pursue both theories of relief" at this stage of litigation. Amendment Order at 4.

Accordingly, the Court DENIES the Motion with respect to Mejia's requests for monetary and equitable relief under her Breach of Fiduciary Duty claim.

## CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendants' RJN is GRANTED.
2. Defendants' Motion is DENIED.

IT IS SO ORDERED.

Dated: April 21, 2025

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge